Case number 18-6066 United States of America v. Garrett Lott Arguments not to exceed 15 minutes per side Mr. Williams, you may proceed for the appellant Thank you. Please record, your honors  I've reserved five minutes of my time for the appellant Thank you. As legal jurisprudence continues to evolve into the 21st century, our Supreme Court has increasingly restricted the ability of the police to illegally and unnecessarily detain individuals where probable cause simply isn't present The guidelines espoused in these cases, though, are quickly exploited by some police officers who simply mold the facts to swash the district courts, resulting in questionable decisions that may be rubber-stamped later by appellate courts Police officers learn the buzzwords that come out of these cases, like officer safety issue, brutality of the circumstances, and inventory search Sadly, some officers don't care about the overarching purposes of the Fourth Amendment, but instead look for ways to circumvent or steer around the Constitution This is that type of case As this court previously said in United States v. Mesa, although there is always a temptation in cases of this nature when a substantial quantity of drugs and firearms are found to let the end justify the means, it must be remembered that the courts only see cases in which the conduct of the officer resulted in contraband being found If officers had found no drugs in the defendant's car Excuse me for interrupting you. I was just going to ask you, what is it that's before us this morning with regard to the suppression motion? Is it whether there was probable cause for the traffic stop or whether there was cause for extending the time of the search? What is it that we're called upon to address in connection with the suppression motion? Your Honor, we believe the district court erred in determining that the stop was justified at its inception and also erred in finding that the stop was not extended unnecessarily based upon the facts On the first point, are you challenging Officer King's credibility in what he said was a staying in the left lane too long? Or are you saying that even accepting his view of the facts, there wasn't probable cause to find a violation of this provision of the law saying you can't remain in the left-hand side of the law? Well, Your Honor, as I understand the standard, it's one in which the court can look at what the district court did for clear error. And in this case, I think based upon the combination of the police report prepared by Officer King and then this later testimony, that there are a number of inconsistencies which could allow this court to find that it was clear error So it's a credibility finding then, so we have to apply the deferential standard of review that applies to fact findings of the lower courts? I believe so, Your Honor. So the court must determine whether or not this stop was justified at its inception. We know from the facts in this case that Lott was driving within the posted speed limit. And the police report says one thing initially, and that is that he was involved in improper lane usage. But when Officer King testified, he was all over the map with his reasons for this stop. He offered other theories for the stop, including that Mr. Lott was impeding traffic, that he exhibited a change in behavior, and then finally there was the observation that he had a change in speed. So if you are correct on that argument, then the whole thing is bad. There's no right to look at any of that evidence. But what if we decide that the police officer was able to make a traffic stop, no matter what his purpose was, which is fairly well the law in the Sixth Circuit. You don't have to have so much a clean purpose, but you do have to have an actual traffic violation, and then you can pull someone over. If that's the case, when did this search become unconstitutional? Your Honor, there is again inconsistencies in the record about what exactly happened near the side of that road. I think if you look at the police report that was initially prepared and is filed in evidence in this case, it makes clear that by the time that Officer King began making a decision about having the canine go around the vehicle and look it over, that he had already checked on the license of Mr. Lott and had already made that determination. So the cases that I've reviewed and have cited to the court indicate that, I believe it's the Rodriguez case, that once that determination has been made, the license has been checked. And in this case, the officers testified that once that was done, or very early in the stop, he had made the determination to give Mr. Lott a warning and let him be on his way. So what Rodriguez tells us is that once that determination has been made, there should be no further delay. The way I understood the facts, though, was the officer went back to his car. I don't necessarily know how it works, but typed something into the computer and was waiting on the results, and the results hadn't come back in yet, and then he went and asked some more questions. That would suggest to me that maybe it falls within Rodriguez because the purposes of the stop, I think, under Rodriguez would still include checking the license plate and the license number. So if that was the state of the facts, how does that affect things, that the response from the computer had not returned when the officer got back out of the car and asked the question and led to the dog sniff? Your Honor, what I would say first is that there was inconsistent testimony at the trial about exactly what level the check was at when the canine search occurred. And that's why I refer back to the police narrative on page one of two in the crime supplement. And the narrative, Officer King records that after checking Lott's operator's license, I proceeded back to the vehicle and asked him to step out of the vehicle and come to the rear of it and talk with me. So I would say, Your Honor, that's the most reliable evidence is what was initially recorded not long after the stop, and one in which he later goes on to say that the canine was deployed after that license check had been made. So my argument is... You have to defer to the trial court's finding, though. It says while Trooper King was waiting for Lott's identification to run, he returned to Lott's car and asked him to exit the car. That suggests to me that at least the trial court had found that it hadn't returned yet. Your Honor... I guess that would be subject to clearly erroneous review. Your Honor, I think this court can review the facts there and make a determination that that factual finding was clearly erroneous. Thank you. So we have a number of inconsistencies that come out of this stop. As I've said, the officer already gave several different reasons for the stop. I've explained in my brief, and I'll explain briefly here before my time runs, that when these different reasons were given, they were also subject to inconsistencies from the other officer that was there. And that was Officer Reeves. That officer testified, for example, that he was summoned over to the side of the road almost immediately. And in fact, I think the facts will show that less than two minutes had really transpired until he was there ready with the dog. So there are inconsistencies in that regard. But this is the type of stop that I think Rodriguez tells us that this is not the kind of stop where somebody's going to be given a warning so a canine should be brought into it. Officer Reeves, for example, also says that he didn't even notice anything suspicious about Mr. Lott. They're basically sitting in the same place waiting for vehicles to pass by that day. And so he doesn't even see anything worthy of stopping Mr. Lott. That's not surprising because based upon the testimony of Officer King, we know that frequently the drivers drive in all lanes of Interstate I-75. In fact, we can kind of joke about it and the fact that we're often held up on the interstate by someone who's driving that left-hand lane. But it's not a matter where people are routinely or frequently pulled over for. And my time's run out, but I will say that even given that excuse, the officer's reasons for the stop change and then it makes clear that. I know you say the officer's reasons changed or were not clear and that sort of thing, but what are the facts that indicate that the time of the stop was impermissibly extended? Well, Your Honor, based upon what's contained in Officer King's report, he knows that by the time that he's made the decision to talk to Mr. Lott further, have him get out of his vehicle and so forth, that he's already ran his license. And it's testified by that point he's already made a determination that he's only going to give Mr. Lott a warning. So no reason to keep him there any longer, Your Honor. Okay, so at that point he should have let him go. And how much time did he extend the time and continue to keep him there? And I'm just not sure what your timeline is. Well, Your Honor, unfortunately when it came to the testimony at the hearing, the officer wasn't able to tell us an exact amount of time. At one point he said he didn't think it was over 10 minutes, but on cross-examination he went on to say that it could have been longer than that. There isn't any video or audio here for us to actually determine the amount of time. But what we do know is that after he's run the license check and after he's already determined that he's only going to make a warning, that he has Mr. Lott get out of the car and then decides to make the canine search. Your client did not testify at the suppression hearing? That's correct, Your Honor. Okay. All right. Thank you. Thank you. May it please the Court, my name is Nick Raybould and I'm here on behalf of the United States. Your Honors, my impression of this case is that it boils down really to just one issue. The district court did not clearly err when it determined that Lott violated Kentucky law at the time of the stop. In other words, the district court did not clearly err when they said that Trooper King had probable cause to stop Lott. He effectively waived the argument that he was not driving in the left-hand lane or that he was not driving below the speed limit or that cars were not passing him because he never contested that below. And he doesn't really contest it here either, and there's no evidence. You said clear error. Isn't it a legal question whether the facts found by the district court rise to the level of a probable cause violation of the statute at issue? It's a mixed question of fact and law. But the facts here are simply that Lott was driving in the left-hand lane about 65 miles per hour and that cars were passing him on the right-hand side. Most of that testimony occurs around page 110. And the district court relied on that in determining that that's exactly what he was doing. And what I think is actually really notable for Your Honors here is that this court upheld a nearly identical stop in United States versus Perez. Back in 1991, I cite it on page 5 of my brief, but it's 936 F2D 574. In that case, a Hispanic man from Florida was driving about 5 miles per hour under the speed limit on I-75 in the left-hand lane. Let's assume that there's not a problem with the stop. Tell me what was the appropriate grounds for extending the stop. Well, Your Honor, I don't actually believe that the stop was really extended. Do you think that there's sufficient testimony that came before the court to explain that timeline? I do. And, in fact, I can explain the timeline to you with citations to the record if you'd like. The district court found that all of the stop—well, I'll just start from the top. Trooper King flagged down Trooper Reams about a minute after the stop. So he sees the guy coming down. He flags him down. Trooper Reams has the drug dog. So the drug dog is there the entire time during the stop. Trooper Reams is parked right in front of Lott. This is on pages 108 to 110. While waiting on the mobile data terminal information to reveal whether or not there were any outstanding warrants or if there was something wrong with his driver's license, Lott couldn't provide insurance that day, so there were some questions as to that. Trooper King went back up to Lott's car on the passenger side and asked for him to get out. Here's the question. Before that, King says after checking Lott's operating license, which would have been the warrant search, right? I believe that would be part of it. And what else would the record indicate was not completed? I believe on page 114 he discusses that whenever he went back up to speak with Lott, that he had not yet seen any results coming back. Now, I will say that there is. Tell me where that is, because that was my struggle, is the issue being King's statement, well, I didn't release him and tell him to have a safe day and travel carefully was due to the fact of his nervousness. Correct. But we know nervousness is not going to save him. Right. Nervousness alone. Nervousness alone is insufficient. That is correct. Show me where it seems like it's back and forth. I was struggling to see whether the actual question had ever been asked as to whether the stop was over, all of the components related to the reason that he pulled him over had been completed, or whether we don't know the answer to that. But you think we know the answer to that. I think we know the answer to that, and I would direct the court to pages 114 and 138 of the record. And in there it shows that Trooper King, the way that this proceeded is he walked back up to Lott's car. Lott is standing right there behind the car. He has not yet gone back. Now, I'll concede that at this point he had not gone back to check again. So it's possible that something could have happened. But this all occurred. Trooper Reams said it was about five minutes. Trooper King said it was no more than ten minutes. So this really occurred. But that is the one question I think you have. If this evidence is corrected that the results haven't come back, that that's part of Rodriguez and still the results were ongoing. But I guess I do have some question about whether cops could manipulate this. So suppose they come back with the information, type it into their thing, and then as long as I don't go back to the car, it's still ongoing. So I'm talking to this individual for 45 minutes, but I haven't checked yet, so I don't know if it hasn't come back. So the purposes of the stop, what could you say to me to assuage the concern that if we rule for you in this case, we wouldn't open up a doctrine that would allow for that type of manipulation, like just to basically get around Rodriguez by not actually checking to see if the results have come back yet? Your Honor, I think that's an excellent point. It's something that I actually asked myself several times when I was coming up to this argument. There is another case. It's United States v. Gerrido where there was a traffic stop also in Kentucky. It was KRS-189-340, which is one of the statutes that Lott has alleged to have had probable cause to believe that he'd violated. That traffic stop lasted over an hour, and in fact in that case it was because the officers were doing a safety check on the car. So they, in a sense, could have been perceived to have been prolonging the stop in some way, but the stop was nonetheless approved because those things were still considered to be necessary to effectuate the purposes of the stop, which was a traffic safety stop. Here, however, what I see to be particularly pertinent is that there's no evidence in the record that there was any manipulation at all here, and I think that that's something that should be emphasized, is that Trooper King, when he stopped Lott, he went up to him and he was investigating why is this guy so nervous. He notes that there's a child in the back seat of the car, and the nervousness was not, you know, he's nervous because a police officer has stopped him. He's nervous. He's shaking. He's visibly, you know, touching his face, and he's sweating. Something's not right, and he's trying to figure that out, and he's engaging with him while he has this data terminal going in the back of his car, and he's talking with him for just this brief few moments. Do you agree that that's the key, that the search has to have been running in the car? Because if he had already known that there was no warrant outstanding and had completed the search, then when he walked back up, he should have done what Regas tells us, that authority for the seizure ends when the task tied to the traffic infraction are or reasonably should have been completed, right? That is correct, Your Honor. I think that's probably what we're both asking. We're trying to understand exactly where in the record you say it's clear that the task incident to the stop had not been completed. Well, the one thing that I would point out, too, is that as far as the extension of the stop, the drug dog, I just want to note this as a matter of fact, the drug dog was not deployed until after he had already admitted to having marijuana in the car. I mean, the way that this proceeded was Trooper King goes back up to Lott. He's standing behind the car at this point. He says, why are you so nervous? Do you have anything in the car that I need to be concerned about? And he says, well, could I search your car? You seem to be very nervous. May I search your car? And he says, no. And Trooper King says, okay, that's fine. But my colleague right here has this drug dog, and he's just going to walk right next to your car if that's all right. And he says, I've got drugs. So that, to me, is really just the crux of the thing is that he's standing there with him. It's five minutes, ten minutes at the most. I would say that this, the factor of the fact that the warrant database, I'm going to call it a warrant database, this mobile data terminal, it's still running. We don't know. He doesn't have insurance. That is a critical factor, that that had not been completed. But do you think there's, at some point, I think the combination of the two is significant? If it was, say it was like a 45-minute conversation rather than a 5- to 10-minute conversation. That would be excessive, yes, Your Honor. So he kind of relied on why I didn't go back to check if the conversation had lasted for a very long time. If it's an excessive amount of time, I don't think that these facts would justify that, no, Your Honor. I mean, what I see here is that you have an officer who's in good faith investigating the mobile data information and waiting to hear back from that, and he goes back up to speak with Mr. Lott because he's extremely nervous. There's a child in the back seat. He's sweating, shaking. He's just, he's not right. And so he asks him some questions, and then he admits to having drugs. And this all happens so quickly. I mean, the testimony on the 5- to 10-minute thing, it's 5- to 10-minutes before the drug dog is run. The drug dog is run after he admits to having marijuana. So that 5- to 10-minute span is just, it's just, you know, like smoke through a keyhole. It happens very quickly. Your Honors, one thing that I would also point out for you is the Perez case. I'd like to discuss it with you. That case in particular I do think is important because, you know, the district court in that case found that there was probable cause to stop Perez's car because he observed a violation of KRS 189-300. I believe that I've established that there was probable cause and that the district court did not clearly err, but the facts of this case are extremely important. Under the same statute, which is KRS 189-300, this officer observed Mr. Perez driving the left lane at a slow speed on I-75, and he stopped him. And he stopped him because he was driving the left lane at a slow speed while cars were passing him on I-75. And this court upheld that stop and noted, in fact, that any thoughts that the officers may have entertained about drug running would not foreclose a stop that would have otherwise been objectively reasonable. That's the exact fact that we have here. We have someone who's violated a traffic law. We can't say, in the absence of any evidence to the contrary, that the district court clearly erred in finding that there was probable cause to initiate this stop. There's no evidence to show that Lott was not driving in the left-hand lane. There's no evidence to show that Lott was not driving under the speed limit. There's no evidence to show that Lott was driving, is the question. In terms of the length of the stop, would it be accurate to say that, on this record, we can't tell when the warrant search phase of this stop was finished, with the officer awaiting the results of the warrant, and how long that took and when that task was completed? We really can't tell that from this record? Your Honor, I think that's a fair statement. There's two things we don't know on this record that I think are important. First of all, we don't know when exactly Trooper King said to Lott, I'm not going to give you a citation. That's on page 145 of the record. He doesn't recall whether it was when he first stopped Lott or whether it was after he had already gone back to write his information and come back up to ask him to get out of the car. We don't know. And we can't tell from the record how long the stop occurred before the officer commenced the dog, the canine walk around the car and that kind of thing? Well, we do know that. We do know that the stop lasted prior to the dog, that only five or ten minutes had lapsed. And that's on pages 110 through 114, and then again on page 138. But then what I would say we don't know is we don't know exactly when he got that information back from the mobile database. And the reason why we don't know that is just because it was never revealed in the record. But what we do know is that he didn't have that information at the time that Lott admitted to having drugs, which was before the drug dog was run around the car, which at the most was ten minutes after the stop, probably closer to five. All right. If Your Honors don't have any other questions, I would ask that you affirm, and I'll rest on my brief. Thank you. Thank you. Counsel, what do you say about this timeline that your opposing counsel has sort of described from the testimony at the hearing, the suppression hearing? Your Honor, I go back again to what I feel is a reliable piece of evidence, and that's the narrative prepared by Officer King himself. And if I may just quickly for the court, he says, again, After checking Lott's operator's license, I proceeded back to the vehicle and asked him to step out of the vehicle and come to the rear and talk to me. Once Lott arrived back to me, I explained the reason for asking him to step out of the vehicle. I told him he had pulled over too close to the white line. It was my safety and due to traffic. He then goes on to say that he spoke with him by the side of the road, explained to him he wasn't going to issue a citation for his violation. And then Lott began to exhibit this behavior he's saying is touching his face, stretching, doing these things that he describes as nervous. The officer goes on to say that he stated to Mr. Lott at that point he had a canine there to assist him and that he started breathing heavily. He then told him he would use the dog to conduct a free air sniff around the vehicle. He began rubbing his head, breathing heavily. Then he stated he had a little bit of personal use marijuana. So there is evidence there as to the kind of sequence of events as opposed to the exact timing of it. But your honors can use common sense to determine that all these events happening in sequence took some time. And after he's been told that he'll only be issued a warning, at that point he should be allowed to leave and go on. Because we've already agreed that nervousness is not enough to keep him there for any longer. Before I forget it, I do want to ask the court, make an oral motion pursuant to Rule 28J, to consider another case of this court from last year. It's United States v. Warfield, 727 Fed APPX 182. It has facts somewhat similar to this. And if the court will allow us, I provided that case to counsel for the United States, if you would allow us to do a short supplemental brief or letter regarding that case. Well, we'll certainly look at the case. I'll leave it up to you as to whether you want to submit a 28-day letter. Thank you, your honor. I do briefly just want to address a couple of the cases that the United States has raised in their brief and here on argument. One is the case of United States v. Guerriero. And I would say, your honor, in that case, factually very distinguishable from the case here. Because in that case, under KRS statute 281755, they were actually allowed as part of that stop to conduct a lengthy inspection of the truck. So the statute allowed them to keep that truck there longer and make that complete inspection. And then on the Perez case relied upon by the United States, we know in this case our officer testified much differently than the officer did in this case. One of the things the court relied upon in the Perez case was the officer said, I stop folks going or driving in the left-hand lane all the time. The testimony in our case was quite the contrary. The officer said, I drive in the left-hand lane. I very infrequently stop people for driving in the left-hand lane. If I stopped people for driving in the left-hand lane, I'd be stopping people all day long every day. The other thing I think is distinguishable from our case is that unlike our case, this officer gave one particular reason for a stop, driving in the left-hand lane. In our case, King switched his story many times about why that stop occurred. And so another thing that is distinguishable in that case is that you had another person in the car who when checked had an active warrant. So there was a reason for the person to be kept there a while because that person had a warrant that had to be checked out. And it also may have, in that case, the Perez case, created more reasons for suspicion. Thank you. Thank you very much. The case is submitted. Mr. Williams, I know you accepted the representation here under the Criminal Justice Act, and we know you do that as a service to the court and our system of justice. So the court would like to thank you for taking the case. Thank you.